MAGGIE JONES, JACK JONES AND WIFE, BLANCHE H. JONES, OTIS JONES (UNMARRIED), LYONS JONES AND WIFE, ETTA JONES, LEE JONES AND WIFE, KATTY JONES, CONNER JONES AND WIFE, MADELINE JONES; DUNCAN D. JONES AND WIFE, CHRISTINE JONES, ALICE JONES THOMPSON AND HUSBAND, LEON THOMPSON, BERNICE JONES PAGE AND HUSBAND, L. S. PAGE, R. RALPH JONES AND WIFE, ADDIE JONES, P. FRANK JONES AND WIFE, MADGIE JONES; BESSIE JONES BREITENBACK AND HUSBAND, HUBERT BREITENBACK, v. C. L. JONES AND WIFE, MRS. C. L. JONES, ED LIVINGSTON AND WIFE, FANNIE JONES LIVINGSTON, LELA BOWDEN, CLEATON JONES LINDSEY, MYRTIE JONES TEW, J. A. JONES, NANNIE JONES, LACY McRAE, NED McRAE, MARVIN McRAE, MRS. EARL THOMAS, LAURA JONES, LAWRENCE JONES, LLOYD JONES, MAE JONES, DAN POPLIN, JOHN POPLIN, MAGGIE BLACKMAN, MAUDE PHILLIPS, LILLIE COLE, MRS. GEORGE HART, MRS. AMANDA HART, JOHN BARBEE, CLAUDE BARBEE, GERTRUDE BARBEE, GEO. W. BARBEE, MRS. TURNER McKENZIE, MRS. J. T. HENRY, JOHN W. COLE, FRANK J. COLE, MARY BARBEE, MRS. JAMES G. THREADGILL, LONNIE C. COLE, JR., JIMMIE COLE, VANDER STEWART, LAWRENCE STEWART, MRS. MEMMIE McINVILLE, NICK STEWART, ALTON STEWART, LEO STEWART, ALICE JONES PATTERSON, LIZZIE JONES SWEATT, MYRTLE JONES SPEARS, ERNEST JONES, LUTHER JONES, IDA T. JONES, WIDOW OF MURDOCK JONES, AND ALL PERSONS WHOSE NAMES AND RESIDENCES ARE UNKNOWN TO PETITIONERS WHO ARE INTERESTED IN THE REAL ESTATE THE SUBJECT OF THIS ACTION, JOHN EARL McKENZIE, TURNER McKENZIE, SR., AND TURNER KENNETH McKENZIE, JR., AND JENNINGS G. KING, GUARDIAN AD LITEM OF JOHN W. COLE AND JIMMY COLE.

(Filed 21 May, 1947.)

### 1. Descent and Distribution § 2—

"Purchase" as contradistinguished from "descent" means every mode of acquisition of an estate known to law except that by which an heir on the death of his ancestor becomes substituted in his place as owner by operation of law.

### 2. Descent and Distribution § 10a—

In order for G. S., 29-1 (4), to apply it is necessary that the person dying intestate without lineal descendants should have acquired the land by descent, or if acquired by purchase, that such person be an heir or one of the heirs of the grantor or devisor.

### 3. Same—

A husband who had acquired real estate by descent, devised same to his wife by will. *Held:* The wife took by purchase, and since she is not an "heir," the provisions of G. S., 29-1 (4), do not apply, and upon her death without lineal descendants the land descends to her collateral heirs rather than to those of her husband.

JONES v. JONES.

**4. Wills § 33g—**

A devise of land to testator's sons "to have the use . . . this use to last through natural life of my said sons" vests in the sons no more than a life estate.

**5. Wills § 38—**

Where a will conveys a life estate to testator's sons without limitation over of the fee, and contains a residuary clause "the rest and residue of my property I give to my wife one-half and the other one-half to my children," *held* the residuary clause is broad enough to include both real and personal property and will be construed to dispose of the remainder in the real property in order to avoid partial intestacy, there being no intent to the contrary apparent and unequivocally expressed in the will.

**6. Wills § 31—**

The intent of the testator is the paramount consideration in the construction of his will.

**7. Wills § 32—**

In seeking the intent of the testator as expressed in the language used by him it will be presumed that he did not intend to die intestate as to any part of his property, and where two constructions are permissible, that construction will be adopted which avoids partial intestacy.

APPEAL by plaintiffs from *Pittman, Resident Judge* of 13th Judicial District, at Chambers at Rockingham, N. C., 8 February, 1947, in proceeding pending in SCOTLAND.

Special proceeding for sale of four certain tracts of land for partition among petitioners as tenants in common and owners in fee thereof, to which respondents are made parties so that the court may determine and adjudicate their claim and interest therein if any—and in which all respondents, other than C. L. Jones and wife, and Fannie Jones Livingston and husband, by answer filed, deny title of petitioners, and specifically plead that the fourth tract is the property of the collateral heirs of Margaret Jones, the wife of John Wesley Jones, and that petitioners have no right, title or interest therein, and assert claim of interest in said lands based upon provisions of Item Four and Item Seven of the last will and testament of John Wesley Jones, deceased, a copy of which is attached to and made a part of their answer for purpose of incorporating same therein.

Counsel, representing the petitioners and the answering respondents, agreed upon facts to be submitted to the court, upon the hearing, as follows: "Two Hundred five acres of the lands, title to which is involved in this action, were devised to John Wesley Jones, by his father, Duncan Jones. The remaining part of the lands involved were acquired by John Wesley Jones from other sources, and constituted, with the 10 acres devised to Turner McKenzie, all of his estate, except a small

JONES *v.* JONES.

amount of personal property. Thereafter, John Wesley Jones died domiciled in Scotland County, leaving a last will and testament duly filed and probated in the office of the Clerk of the Superior Court of Scotland County, a copy of which is hereto attached, marked Exhibit A, and made a part of these agreed facts." Pertinent parts of the will are as follows:

"Item Two. I give to my wife should she survive me, fifty acres to be laid off so as to include my residence and to best advantage to same and rest of farm.

"Item Three. I desire that my wife's sister, Sallie Jones, shall have a home and support along with my wife so long as Sallie shall remain single and desire to live on the said fifty acres of land devised to my wife.

"Item Four. The residue of my land I dispose of as follows: To John Earle McKenzie and Turner Kenneth McKenzie, sons of Turner McKenzie, (Sr.), I give ten acres of land to be laid off on the public road next to the McEachin land and extending back west to ditch so as to include ten acres for the use of said children. The rest of my land I give to my sons John North Jones, Angus D. Jones and Luther Thomas Jones to have the use of same for their care, the maintenance and support of themselves and their families should they or any of them marry hereafter, this use to last through natural life of my said sons provided that if any one or more of said sons shall pledge their right and interest in said lands by mortgage or other written obligation or submit to any judgment that would otherwise take title or encumber their title to said lands during each his life, his estate shall thereby terminate and shall go over to the children of such son so forfeiting, if he have lawful issue then living, and if he have no lawful issue, then it shall go over to the surviving brothers and their children to be held as they hold their portions herein devised for their support, subject to all the conditions set out in the first instance. The lands devised to my sons may be held in common or partitioned as they may prefer.

"Item Five. My personal property I give as follows: To my widow all my household and kitchin furniture and furnishings, provisions on hand and family supplies. To my widow one cow and her increase, of her selection; and if there be other cows, North shall have one milk cow.

"Item Six. My livestock otherwise to be kept to complete farming operations for the year, and thereafter they and my farming equipment may be sold or may be allowed to remain on the farm for the use of my family provided my sons prove industrious, attentive to business and of good habits, from year to year for ten years after my death, of which my executor shall be judge, or he may consult neighbors and accept their verdict and act on it, and if he so determines may sell said livestock and outfit at completion of any crop season, he to be the judge at all times as to when to sell.

"ITEM SEVEN. The rest and residue of my property I give to my wife one half, and the other half to my children in equal share."

Further agreed facts are these:

"The widow and children of John Wesley Jones, named in the will, died intestate in the following order:

        (a)  Angus D. Jones
        (b)  Margaret Jones
        (c)  John North Jones
        (d)  Luther Thomas Jones

"John Wesley Jones and Margaret Jones were first cousins.

"John North Jones, Angus D. Jones and Luther Thomas Jones, devisees under the will of John Wesley Jones, died intestate and without issue. None of the three named devisees married nor pledged their right and interest in the lands described in Paragraph IV of the will, by mortgage or other written obligation, nor submitted to any judgment that would otherwise take title or encumber their title during each his life nor attempted to make any conveyance of any interest in said lands.

"At the time of the execution of the will of John Wesley Jones, John North Jones and Luther Thomas Jones were incompetents.

"The collateral heirs at law of John North Jones, Angus D. Jones and Luther Thomas Jones are parties to this action, either as plaintiffs or defendants.

"The collateral heirs at law of the testator, John Wesley Jones, claim title to the lands devised under Items II and IV of the will of John Wesley Jones.

"The collateral heirs of Margaret Jones claim title to the lands devised under Item II of said will and one-half interest in the lands devised under Item IV of said will, claiming said one-half interest under Item VII of the will."

The counsel thereupon stipulated "that when the court enters judgment in this cause that such judgment shall fix the interest of the parties upon the pleadings and this agreed statement of facts, etc."

When the cause came on for hearing, pursuant to agreement of counsel, the counsel submitted the agreed facts and stipulation, as above set forth, together with an admitted copy of the will of J. Wesley Jones, incorporating the provisions therein hereinabove quoted. The court thereupon concludes as follows:

"1. That J. Wesley Jones on 5 January, 1917, executed his last will and testament, which last will and testament was filed in the office of the Clerk of the Superior Court of Scotland County, probated and recorded as above set out, and the Court makes the agreed facts set forth in said stipulation a part of its findings of fact.

"2. The Court is of opinion, and so holds, that the fifty (50) acres of land described in the will of John Wesley Jones (who is the same person as J. Wesley Jones), in Item 2 thereof, vested in fee simple in Margaret Jones, surviving widow of John Wesley Jones, and the same was thereafter laid off in accordance with said Item 2.

"3. That Margaret Jones, widow of John Wesley Jones, was not an heir of John Wesley Jones, and that in determining the collateral heirs who are entitled to said property a new inheritable quality began with Margaret Jones, as to all land that she took under the will of John Wesley Jones, and the said fifty (50) acres is now vested in the collateral heirs of Luther Thomas Jones, now deceased, who are of the blood of Margaret Jones.

"4. The Court is of opinion, and so holds, that in Item 4 of the will of the said John Wesley Jones, after disposing of ten (10) acres of land to John Earl McKenzie and Turner Kenneth McKenzie, sons of Turner McKenzie, Sr., in the rest of the lands of John Wesley Jones, John North Jones, Angus D. Jones and Luther Thomas Jones took a right to the life use of the same and that, upon the death of Luther Thomas Jones, who survived John North Jones and Angus D. Jones, under Item 7 of said will, the said property vested in the collateral heirs of Margaret Jones to the extent of one-half (½) thereof, and the other remaining half in the collateral heirs of John North Jones, Angus D. Jones and Luther Thomas Jones, who are of the blood of John Wesley Jones and Duncan D. Jones, his father.

"5. That since it appears from the admission of counsel that the collateral heirs of Luther Thomas Jones, deceased, who are of the blood of John Wesley Jones, as well as of the blood of Duncan Jones, father of John Wesley Jones, are the same persons:

"Now, THEREFORE, it is ORDERED, ADJUDGED AND DECREED that the collateral heirs of Margaret Jones hold title to the lands devised under Item 2 of the will of John Wesley Jones, and a one-half (½) interest in the lands devised under Item 4 of said will, which interest in the lands described in Item 4 of said will passed under Item 7 of the said will, and in accordance therewith."

And thereupon in judgment signed and entered, the court, among other things not here essential, "ordered, adjudged and decreed that the collateral heirs of Margaret Jones hold title to the lands devised under Item 2 of the will of John Wesley Jones, and a one-half (½) interest in the lands devised under Item 4 of said will, which interest in the lands described in Item 4 of said will passed under Item 7 of the said will, and in accordance therewith."

From the judgment so entered, plaintiffs appeal to Supreme Court, and assign error.

JONES *v.* JONES.

*Ellis E. Page and McLean & Stacy for plaintiffs, appellants.*

*Gilbert Medlin and Varser, McIntyre & Henry for defendants, appellees.*

WINBORNE, J. The challenge to the judgment below raises for determination this basic question: Does the devise to Margaret Jones, under the will of John Wesley Jones, of whatever land it covers, fall within the purview of the provisions of the fourth rule of descent, G. S., 29-1? If it does, the judgment is in error, and should be reversed. But if it does not, the judgment is correct and should be affirmed, in part certainly, in so far as it relates to land devised to her under Item II of the will, and in whole, if she took any land under Item VII, the residuary clause of the will.

The fourth rule of descent provides, in respect of collateral descent of estate derived from ancestor, that on failure of lineal descendants, and where the inheritance has been transmitted by descent from an ancestor, or has been derived by gift, devise or settlement from an ancestor, to whom the person thus advanced would, in the event of such ancestor's death, have been the heir or one of the heirs, the inheritance shall descend to the next collateral relations, capable of inheriting, of the person last seized, who were of the blood of such ancestor, subject to rules two and three.

It appears from the wording of the rule that it applies where, and only to the extent that, the inheritance (1) has been transmitted by descent from an ancestor, or (2) has been derived by gift, devise or settlement from an ancestor, to whom the person thus advanced would, in the event of such ancestor's death, have been the heir or one of the heirs.

In this connection, it is appropriate to note that real property may be acquired in only two ways, by descent and by purchase. Purchase in that sense is " 'every mode of acquisition of estate known to the law, except that by which an heir on the death of his ancestor becomes substituted in his place as owner by operation of law.' Taking by will is taking by purchase in the most comprehensive meaning of the latter term." 16 Am. Jur., 769.

In the light of this distinction between descent and purchase, for the fourth rule of descent to be applicable, the estate shall have been transmitted by descent from the person last seized by purchase, or shall have been derived by will, devise or settlement from such person so last seized, to one who, upon the death of that person, would have been the heir or one of the heirs of such person.

Thus, when this rule is applied to the facts of the case in hand, it is seen that the estate acquired by Margaret Jones was not transmitted to her by descent, and, though it was derived by devise under the will of

JONES *v.* JONES.

John Wesley Jones, the devise was not from an ancestor, to whom she, the person advanced, would, in the event of the death of such ancestor, have been the heir or one of the heirs. Therefore, the devise to her does not fall within the language or the purview of the provisions of the fourth rule of descent. Hence, the estate does not pass by descent, but by purchase from John Wesley Jones to a stranger to his line, and thereafter descent of the estate would stem from such stranger as a new *propositus,* or person from whom descent is traced. This is in keeping with the holding of this Court in *Burgwyn v. Devereux,* 23 N. C., 583. See also *Ex Parte Barefoot,* 201 N. C., 393, 160 S. E., 365. The case of *Poisson v. Pettaway,* 159 N. C., 650, 95 S. E., 930, differs in factual situation, but is not in conflict with decision here.

The next and final question is whether Margaret Jones took any land under the residuary provisions of item seven of the will of John Wesley Jones.

In this connection it is noted that in item four of the will, after having given to the McKenzies 10 acres of land, about which there is no controversy here, the testator gives "the rest" of his land to his three sons "to have the use of the same for their care, their maintenance and support of themselves and their families should they or any of them marry hereafter, this use to last throughout the natural life of my said sons . . ." This devise vests in these sons no more than a life estate. Moreover, in this item four no disposition is made of the fee in the land, after the life estate of the sons. This gives rise to the question as to the effect of the residuary clause "the rest and residue of my property I give to my wife one-half, and the other one-half to my children in equal share," appearing in item seven of the will. This language is broad enough to cover both real and personal property. Hence, it will be construed to include both unless there is an apparent intent to the contrary, plainly and unequivocally expressed in the writing. *Faison v. Middleton,* 171 N. C., 170, 88 S. E., 141. The intent of the testator is the paramount consideration in the construction of his will. "In searching for the intent of the testator as expressed in the language used by him, we start with the presumption that one who makes a will is of disposing mind and memory, and does not intend to die intestate as to any part of his property," *Ferguson v. Ferguson;* 225 N. C., 375, 35 S. E. (2d), 231, where the subject is fully discussed.

In the *Ferguson case, supra,* it is also stated that: "Even where a will is reasonably susceptible to two constructions, the one favorable to complete testacy, the other consistent with partial testacy, in application of the presumption, the former construction will be adopted, and the latter rejected."

In the light of this presumption, it may not be held as a matter of law that the residuary clause appearing in item seven relates only to personal

property. We, therefore, hold that the court below properly construed this provision of the will as sufficient to pass the real estate undisposed of under item four of the will.

The judgment below is

Affirmed.